24-1605 Conmac Investments, Inc. v. Commissioner of Internal Revenue Mr. Flynn, when you're prepared, please proceed. May it please the Court, my name is Kevin Flynn, I'm the attorney for appellant. In this case, the appellant is Conmac Investments, Inc. Conmac was, during the years that are at issue in this case, engaged in the business of owning, managing, and leasing farmland in Newport, Arkansas. Your Honors, there are three issues that I'll principally discuss today, but our underlying theme in this case, Your Honor, is that we should have prevailed in the court below, in the tax court, because we proved that the Conmac's decision to begin amortizing base acres in 2009 was not a change in method of accounting. And because it was not a change in method of accounting, it did not require Conmac to seek the IRS's consent before it began to amortize base acres. Counsel, so we've reached the most important issue on that to me. You're aware that the regulation says, except as provided in a later section, a change in the treatment of an asset from non-depreciable or non-amortizable to amortizable for this purpose, this case, is a change of method of accounting. Yes. And the tax court relied almost entirely on that. And doesn't it at least establish a presumption? No, Your Honor. No, wait, Counsel. It doesn't at least establish a presumption that a change in the treatment of an amortizable asset is a change of method of accounting. No, I don't believe it does, Your Honor. That's sort of a tricky regulation, but I'll walk through it. In that regulation, and the government does argue that it creates a presumption, but we obviously disagree with that. In that regulation, Your Honor, there is an introductory paragraph. In the introductory paragraph, which the tax court either ignored or missed, and the government, I don't believe, missed, but doesn't address. The introductory paragraph to the regulation you cited says, and I'm reading it, except as provided in paragraph E22id3 of this section, a change in treatment from non-amortizable to amortizable is a change in method of accounting. So this is where you have to take a march through the regulations, Your Honor. So when you go to that regulation, which is in the introductory paragraph. You mean the phrase on the very sentence I quoted? That precedes the very sentence you quoted, yes. Yeah, right, right, part of the same sentence, go ahead. Yes, it says, changes in depreciation or amortizations that are not changes in methods of accounting. And it gives us a list. And it gives you, no, it directs you. Yeah, it gives us a list. No, it directs you to another regulation. Well, no, it gives us lists, too. What do you think the list is, the I, 2, 3, and 4 that follow? Those are a list. But, no, respectfully, Your Honor, it does direct you, it says, regulation 1.46-E22iB applies to determine whether a change in depreciation or amortization is not a change in method of accounting. Which takes you back to the initial point of my argument, that you only have a change in method of accounting, if you follow this regulation, trace it back, if you have a change, if it's an issue of timing, or if it's an issue of change in underlying facts. So it does not, I respect that. Doesn't that completely read out, though, the general rule, a change to the treatment from a non-amortizable is a change in method of accounting? Why? Doesn't that reading of going back here, and I understand your point, to come back to the main point about math errors and all, and go right down it, doesn't that read out the sentence and put the phrase at the beginning ahead of it? And what do you think about the theory that the phrase refers to the items that follow in 3, useful life, changes in use, because those they list as examples, and don't you think the fair reading is they're referring to those specific subdivisions of 3 that you rely on? I agree that it lists the items you mentioned, Your Honor, but however, it's not governing because it directs you back to the fundamental elementary rules. It's not exclusive, is what you're saying. Right. It says, well, it's more than that. It says changes from non-amortization to amortization are not, underlying not, changes in method of accounting, unless they affect a change in timing, or unless they are not a change in underlying facts. And in our case, Your Honor, there was no change in timing, and there was a change in underlying facts. What is the change? Wait a minute, why is there no change in timing? I mean, maybe I'm confused, but I mean, doesn't this amortization schedule change the method of timing when income is realized? No, it does not, Your Honor, under the terms of the regulation. Now, it reduces income, it permanently reduces income in the year that the deductions are taken, but you have to think of changes in methods of accounting as sort of deferring, postponing, spreading a deduction over time. These were not that, Your Honor. A change in timing only is one that says, when should I take this deduction? Do I take it over 10 years? Doesn't it relate to when the income is realized? The deduction affects... No, the deduction obviously affects when the income is realized. But this deduction does not affect the timing of income. It does not affect timing in the sense that if CONMAC had amortized these base acres over 15 years, which they did, and then in year 3 of that, they changed it, let's say, let's do it for 7 years instead of 15 years. That may be a change that affected timing, but that's not what CONMAC did here, Your Honor. Other than finding out what other people have chosen to do, what's the change of facts here? In this case, there was two things, Your Honor, that changed facts. One was learning what other people did, and that was very significant, and two was learning a new law. So on the change of what other people did, the certified public accountant... For what cases tell us that that's what's contemplated by a change of underlying facts? Two that we cite in the brief, Your Honor... As opposed to, say, a storm, or, you know, some damage, or, I mean, I'm trying to get my mind around just getting a little more information about how other people handle their taxes is a change of facts. We cite two in our brief, Your Honor, two principal cases. One is the Underhill case. Your Honor, in the Underhill case, the taxpayer reported income from notes under a certain methodology for a period of years. Then a circuit court case came out named Phillips v. Frank that said you could use a different method to report income received on notes. So based on that new law, the taxpayer in that case changed the way that he reported the income that he received from the notes. The other case, which is very similar to ours is Southern Pacific and the Kansas City Railroad cases. In those cases, railroads for years did not depreciate tunnel bores and railroad beds because they didn't know what their useful life was. And then all of a sudden, these railroad companies, and there were other railroad companies, developed studies that said, actually, that railroad beds and tunnel bores do have a useful life. They're not indeterminate. So, Your Honor, they began depreciating railroad beds and tunnel bores based on studies that they performed. So we cite that case. That's very similar to what happened in our case. In our case, CONMAC's external certified public accountant represented farmland companies even larger than CONMAC. It went to our in-house accountant at CONMAC and said, there are these other farmland owners outside of Newport that are even larger than you that have determined that it's And by the way, they said to our CPA, Mr. Gary Duncan, here are two memoranda of law and this was in the tax court record, whereby it was determined that it's proper to amortize base acres. So Gary Duncan, who was the internal certified public accountant, got together with Shelly Evans, who was the farmland manager, and they came up with a fact-based method to amortize base acres. But the point being, Your Honor, there was a change in the law. They learned new law from these memoranda of law, and they learned new facts that other farmland owners even bigger than CONMAC, and they're substantial in Newport, were amortizing base acres. And I put affidavits into this effect in the tax court. Where the tax court judge, she was wrong in a lot of respects, but one point she was very wrong on, Your Honor, is she said that we did not introduce any evidence. Mr. Evans' affidavit was 18 pages in length. Mr. Duncan's affidavit was 12 pages in length. I wrote five pages on this issue, Your Honor. Your Honors, excuse me. And the court, for some reason, said that petitioner, or petitioner in tax court, did not identify any facts. It's completely wrong. And it's similar to the issue on timing. The judge in the tax court case, I looked at your beautiful ballpark the other day when I got here yesterday, and looked through the fence. You cannot get to second base without, pardon me, touching first base first. The judge never got to second base because she never even considered the issue of timing. She never even addressed that in her opinion. And there is no way under a proper analysis of section 446, Your Honors, that you can look at a change in method of accounting without first saying was there a method of accounting, number one. And number two, was there a change? And you can only have a change if, one, you first had a method of accounting. We believe we did not. But you have to look at the issue of was there a change. And I go back to Your Honor's question where I responded. You have to show a change in timing. Was income deferred? Was income postponed? Did we accelerate a deduction or delay a deduction? In this case, we did not do that. They were permanent reductions in taxable income. In the brief, Your Honors, you have, on page 15 of our reply brief, this sort of difficult chart to analyze, but I'll summarize it by saying there is a theory, not a theory, there is an accepted approach in tax law to look at timing issues for change of method of accounting, which the government cites and we cite, that says did these deductions permanently reduce lifetime taxable income? And if the deductions permanently reduce lifetime taxable income, they're not a change in method of accounting because it's not an issue of timing. And the government in its brief makes a lot of mistakes, which I won't try to articulate, but we respond to it in the reply brief and we respond to their analysis of how they were wrong in trying to say this was an issue of timing. But more importantly, Your Honors, and I can't articulate it, but it's in the brief, it's too hard to articulate the numbers on this chart, but we show on the chart on page 15 of our reply brief that our decision to amortize base acres permanently reduced CONMAX lifetime taxable income. And when you permanently reduce lifetime taxable income, you do not, per se, as a matter of law, have an issue of timing. You can't have both. You can't permanently reduce lifetime taxable income and have an issue of timing. So I invite Your Honors to look at a moment when you have more time than what I could articulate in my time this morning. And I have other issues, but I see my time for rebuttal is evaporating, so unless there's a question, I'll save the rest of my time. Thank you. Mr. Brandman. May it please the Court, Robert Brandman for the Commissioner of Internal Revenue. This case is easily resolved by reference to, I'm going to say, first principles of income tax accounting. A business is entitled to deduct its costs from its income in determining its taxable income. That includes both, you know, things that it costs for this year, labor, materials, so forth, and its capital expenditures. So it has to spend money to buy land, trucks, crane silos, what have you. It's entitled to deduct those costs from its business income. If it's property that's expected to last over a period of more than one year, there's a question of when to deduct those costs. There's a default method that is, when the property is sold, the gross sales price is income, but subtract the costs at the end. The difference is income or loss to the taxpayer. Amortization and depreciation are other methods provided by the Internal Revenue Code by which those costs might be deducted ratably over a period of years, but you only get to deduct them once. If you deduct them over a period of years, then when the property is sold at the end, you don't get to subtract the costs at that time. By amortizing over a period of years, CONMAC is deducting earlier, but when it sells the property, the entire gross sales price is income, so it has more income then. The difference is simply a matter of timing. The reference to timing refers to both income and deductions. Of course, they're two sides of the same coin. If deductions are changed, then if the timing of deductions are changed, then the timing of income is changed also. The Internal Revenue Code allows the taxpayer to use any acceptable method at the beginning, but what it does not permit a taxpayer to do is start amortizing and then change to not amortizing or vice versa without getting the Commissioner's consent. That's exactly what CONMAC did. I appreciate the reference to the chart in the brief because I'd like to go over it with you now and tell you exactly where it goes wrong. It does an admiral job... Which page is it on, Counsel? It's 15 of the reply brief. It does an admiral job on the left side laying out my numbers and showing how with or without amortization the lifetime income of the hypothetical company is the same. On the right side, under what he's calling the corrected example, you might notice at the beginning he starts with a different number. I assumed that one acre cost $3,400 and it was going to be $3,000 of land and $400 of base acre. My friend starts with an assumption of $3,000 it costs to buy the acre and he's going to allocate $400 to the base acre and $2,500 to the land. But as long as he's doing the same thing in both columns it shouldn't make any difference. Where he goes wrong is in the column that starts without amortization. At the top he's got a total purchase price of $3,000 and then when he sells it of which some is allocated to land and some is allocated to base acre. And then when he sells it later for $3,000 he's saying that the basis is just the $2,500. It should be there hasn't been any amortization so the basis for the whole thing should be $3,000. I think what he's doing is saying he's only selling the land with the base acre with the cost of $2,500 and the base acre has disappeared. Disappeared from this example. Maybe he's thinking after 15 years it's been fully amortized and so it's gone now. In fact if there's been no change in market value when the farmer sells the acre 15 years later he's going to sell it for the same amount that he paid for it including the base acre and he's going to get $3,000 for it. And that brings the lifetime income in that column back down to $7,500. I think my friend sometimes said that base acres can't be bought and sold which is not quite right. He admits that CONMAC when it bought the farms it negotiated with the seller for the passage of the base acres. That's a purchase of base acres. It's just part and parcel of the land. And when CONMAC we don't know what it's life expectancy is but at some point it will expire or the owners will want to get out. The owners or their descendants will want to get out of the business of owning farmland and renting it out. They will sell the land with the base acres that might be worth more or less at that time depending upon the life of the crop support program. And CONMAC will be able to deduct its cost of land and base acres at that time. By affirming the tax court you're not depriving CONMAC of any deductions. You're just changing the time when it will get them back to the property. Back to the time it planned on taking them when it started not amortizing them. So council, what is the change of timing in this case? It will not be able to take amortization deductions and recover its costs during 2009 through 2014 but when it sells the land, which we don't know when that will be but it will happen sometime in a case covering this matter from the 5th circuit, the court cheekily referred to the day of Armageddon. No later than that CONMAC will sell the land and it will deduct its acquisition cost then. That's the change in timing. I'm sorry maybe you're getting at a different point. There have been two changes of accounting method in the record. One in 2009 when CONMAC switched from not amortizing to amortizing and another in 2013 when the commissioner required CONMAC to switch back to its original method. That's when it went from amortizing to not amortizing. So there are two years in which there has been a change in accounting method. Is that the question? Yeah. Okay. The only other issue is the 481 adjustment which is standard. If there has been a change in accounting method, the code prescribes that an adjustment be made so that no costs are double counted or omitted. And the commissioner made that adjustment to account for the closed years 2009 through 2012. Those years can't be adjusted but an adjustment can be made in an open year like 2013 so that CONMAC doesn't get to take the partial amortization of some years when it should be getting those deductions at the time of sale. It's the commissioner's position that the railroad cases which do support the other side, that those just don't count anymore in anything except railroads, right? Yes. But even if they did, those facts don't apply to CONMAC. I'm glad you asked about the railroad cases because they're really quite interesting. There was a change in underlying facts in the railroad cases. The railroad, the old lines were built in the middle of the 19th century with pickaxes and a windy pass. They don't allow a lot of freight. Over 120 years, you've got diesel-powered grading equipment that can build wider lines, straighter, they can go faster, they can build bigger tunnels. The Panama Canal opened, the interstate highway system came along and the old lines had to compete with interstate trucking. The tax court thought those were enough changes that the old lines, even if they could still last forever, they'd become obsolete. And so the tax court worked to allow these old line railroads to deduct the cost of building their obsolete lines. CONMAC's situation is nothing like that. They had only been treating base acres in their books for a few years. Between 2004 and 2009, they didn't learn some new thing about the imminent demise of the crop support program. They treated them as not amortizable and didn't learn anything new about the life expectancy or the expected useful life of base acres. So even if the railroad cases applied, they would not cover CONMAC's situation. If there are no more questions, I'll close. I don't see any. Thank you, Mr. Brandman. Mr. Flynn, do you have a rebuttal? Thank you very much. The numbers on chart 15, I adopted Mr. Brandman's numbers. Let me go back to the chart, if I may. What Mr. Brandman suggested is that we use a purchase price for an acre of land of $3,000 and the cost of a base acre, I say cost, that's his term, of $431.81. Those are his numbers. I adopted those numbers and showed how his analysis was wrong. But fundamentally, what I asked this court to understand is that his statements are wrong, and I'm not saying they're purposely wrong. You do not buy and sell base acres. Base acres are a right to receive farm subsidy payments from the federal government. Think of a food stamp. They're the right to receive income from the federal government. You and I can't buy and sell those. CONMAC cannot buy and sell those. But they go with the land, counsel. They don't really go with the land. Explain to us how they don't go with the land and the tenant. I assume that you have a farm that has 10 base acres. I assume you have another farm that has zero base acres. I want to buy your farm, and I negotiate with you, and the word I use in the brief is the right word, which the principles of the company use. I negotiate with you, Judge Benton. I want you to pass those base acres to me. But you can say to John Connor, that owns CONMAC, forget it! I have this other farmland over here, and I'm going to take those 10 base acres and assign them to that farmland. So it is negotiated as part of the purchase price. It's negotiated for the passage, and then you notify the Farm Services Agency that you've negotiated the passage, but you don't put a value on them, and you can't buy and sell them. Well, counsel, in buying and selling something, some value has to be put on them, even if it's downgraded by discounts over time or something like that. The parties may... The parties may say, I want that land, I don't care if I get the base acres. If you have a bunch of farmland and I want to buy it, I don't care. But the base acres cannot, they're not numerically stated as a dollar value. They don't get added to the basis of the land. But there's a probability of getting them in the future. Pardon me? There's a probability of getting base acres and a probability of the program continuing in the future. Or losing them tomorrow. That's the reason I used the word probability. I agree with you completely. Go ahead. I'm done. I don't know very much, but let me start with this. The base acres are established generally by looking at what's been planted on the land over a five year period under the federal crop program. And the base acres can be established at any point. You can say, I planted this for five years, you can go back in and reestablish. If you're a farmer, you're a brand new farmer, you start off and you say, I farmed this, I farmed this, I planted corn this number of acres. They're qualifying under the program. At that point I can go ahead and establish my base acres and they're there. Now when you go to sell the land, you can say, you can take the base acres but I've got a bunch of other farmland that I own and I'm not going to give up my base acres. I'm going to keep it and apply it to another piece of property that I own. That's 100% correct. 100% correct. Now, whoever's buying that land says, hold on, wait a minute, I want the established base acres because I want access to the farm program during the first five years. I don't want to go naked and I'm going to pay you less if you don't let them go with. That's a negotiated thing, goes with the land. But it's all part and parcel of the ultimate deal. And if you cut the deal and the deal is the base acres are going with the land, they go with the land. The people, the principals in this business don't say that they don't run with the land because they're not attached to the land. They're a right to receive something because you have that land. They're a right to receive the subsidy or the insurance payments or whatever they're calling them today, right? Right. But they're part of the original sale, right? Not necessarily because if you have another... You could do, just like you're saying, I'm walking away from it, I don't care. I'm keeping them, you're not getting them, and predictably that should lower the price if someone's willing to pay for the land. There's no market that says that. That just depends what the market is because you can't just go around selling the base acres without the land going with it, right? If you're the farmer, you just can't go sell your base acres to someone. Absolutely not. There's no market for it. They're not an asset. They're not a saleable asset. But they can go with the land because it's already been established to this piece of property. If you sell it to another person who's in the business of farming, they can go with it. Correct. And I guess I'm having a hard time figuring out how that's not part and parcel with the land, which is the argument that... It's not, though. When CONMAC bought... We'll go back to Mr. Brannman's example. He assumes you pay $3,000 for an acre of land. What Mr. Brannman does is add the base acres to the basis. You don't do that. What CONMAC did was say, okay, $3,000 for the land, but I'm going to take that base acre, which is worth $431, and put it on this ledger account over here, and I'll reduce my basis in the land. And never the twain shall meet. I amortize the base acres. I own the land. The fallacy in their argument is that base acres somehow are attached to the land, become part of the basis. Let me ask you this. Nowhere in the argument or in the briefs or anything in the tax court did they ever say, what's the right timing for amortizing base acres? Nowhere. You can comb the opinion. You can comb the briefs. Nowhere in there it says, gee, you did it wrong. You should have done it this way. And the reason why is because it's not an issue of timing. It permanently reduced the income that CONMAC received. And one of your honors, I apologize, I don't remember who, said at the end of the 15-year period, you don't amortize them anymore. That's true. They've been fully amortized. You still have the base acres that are assigned to that land. And the FSA, Field Service Agency, knows that those base acres are assigned to the land, but CONMAC no longer amortizes them. And since CONMAC's not a person, they can't die and nowhere can get a free stepped-up basis. So when they die, when they sell the acres, what happens to the... If you sell it for the same $3,000, is anything ever recaptured at that point? Not on the base acres, no, your honor. They take that basis which has been reduced because they assigned part of the basis to the base acres, and they report their gain and loss if they ever sell that land. As a matter of fact, CONMAC buys and holds. But if they were ever to sell land, the base acres are completely irrelevant to it. Their gain or loss would be based on the purchase price of $3,000 reduced by the amortized amount, and if they sell it for $3,000, $4,000, or $5,000, that's how they compute the gain or loss. In the example, I took Mr. Brannon's numbers and showed how they sold it for $3,000, and their consequence was that the amortization of base acres permanently reduced CONMAC's lifetime taxable income, which is not timing. It's not... Think about it. We're not saying, oh, you should have done it over five years, seven years, eight years, ten years. You just permanently reduce the income. Now, you can say that's a good thing or a bad thing that CONMAC did, but that's what they did. They did not play with the timing of when these assets, not even an asset, intangible asset, would be... It's an asset, counsel. It's an intangible asset. I apologize. Proceed. Just one other quick thing. On the railroad cases, if I may pick up on your... And I apologize, and thank you for the time. The railroad cases, the tax court never... I apologize, Your Honor. Never said they're not... You can't rely upon them. They've never limited them to saying that other tax payers, like my client, can't rely on them. They just said to another railroad company, if you're going to come into this court, you have to prove your case. Thank you, Mr. Flynn. Sorry for running off. Thanks, both counsel, for the arguments you provided to the court this morning in helping illuminate the briefing that we've been studying. We'll continue to study the record and render decision in due course. Thank you.